[No. 13659. Department Two. February 7, 1917.]

GEORGE MOTTET, *Cross-Appellant*, v. M. A. STAFFORD, *Respondent*, THOMAS H. BRENTS, *Appellant*, J. J. GUMM *et al.*, *Defendants*, OREGON-WASHINGTON RAILROAD & NAVIGATION COMPANY, *Garnishee Defendant*.[1]

APPEAL—TIME FOR TAKING—JURISDICTION. After the time limited for taking an appeal has expired, jurisdiction cannot be conferred by admitting timely service.

SAME—NOTICE — CROSS-APPEAL — TIME FOR TAKING. Rem. Code, § 1720, providing that parties similarly affected by an order may join in the notice of appeal within ten days after the notice is given, or serve an independent notice of appeal, does not enlarge the ninety days limited for the taking of an appeal which is an independent and adverse cross-appeal, in a proceeding in which two garnishees and an assignee of the judgment were all adversely seeking to obtain a fund in court.

GARNISHMENT—OF JUDGMENT—ASSIGNMENT — PRIORITIES. Under Rem. Code, § 664, which provides that a judgment debtor of the defendant may be garnished when the judgment has not been previously assigned on the record or by writing filed in the office of the clerk, a garnishment is superior to an assignment of the judgment which was not filed until three hours after the writ was served.

SAME—AMENDMENT OF AFFIDAVIT—EFFECT. Rights under an original writ of garnishment not served on the wife of the judgment debtor are not lost by the filing of an amended affidavit and causing a new writ to be served on the wife, since the amendment was one contemplated by Rem. Code, § 303, as not affecting rights acquired.

¹Reported in 162 Pac. 1001.

Cross-appeals from a judgment of the superior court for Walla Walla county, Mills, J., entered March 24, 1916, in favor of the intervener, in garnishment proceedings, tried to the court. Affirmed.

*Herbert C. Bryson,* for plaintiff.

*Thos. H. Brents, in propria persona.*

*M. A. Stafford, in propria persona (Will M. Peterson* and *J. P. Neal,* on the brief), for respondent.

.WEBSTER, J.—These appeals involve conflicting claims to a fund in court. The facts are not controverted and, so far as pertinent to the questions for consideration, are these: J. J. Gumm, on the 20th day of October, 1915, in an action for damages for killing live stock, recovered a verdict against the Oregon-Washington Railroad & Navigation Company for the sum of $425. On the 19th day of October, cross-appellant, Mottet, a judgment creditor of Gumm, signed and verified an affidavit in garnishment, which he retained in his possession until the verdict of the jury was received and recorded; whereupon he filed the affidavit as the basis of an application for a writ of garnishment. The writ was issued and, on the same day, was served on the railroad company. Thereafter the company answered, setting forth as its only indebtedness to Gumm the amount due on the judgment for killing the live stock. About eight a. m., on October 21, Gumm, for value and in good faith, assigned his judgment in writing to Thomas H. Brents. About one hour thereafter, M. A. Stafford commenced an action against Gumm and caused a writ of garnishment therein to be served on the railroad company. At 11:50 o'clock of the same morning and approximately three hours after the service of Stafford's writ of garnishment, Brents filed his assignment of judgment in the office of the clerk of the court. Subsequently Stafford, by leave of court, intervened in the garnishment proceeding of Mottet v. Gumm, setting up his writ of garnishment and

claiming thereunder. Thereafter Brents was made a party defendant thereto so that the rights of all parties claiming an interest in the fund might be adjudicated. Brents answered, challenging the rights of both Mottet and Stafford and claiming the entire fund by virtue of his assignment. Issues were properly framed and the cause thereafter tried, resulting in a judgment dismissing Mottet's writ of garnishment and adjudging the rights of Brents under his assignment to be subject and inferior to the garnishment lien of Stafford. Brents appeals and Mottet cross-appeals. Appellant Brents and respondent, Stafford, join in a motion to dismiss the cross-appeal, upon the ground that notice thereof was not served within the time limited by law. We will first notice this motion.

The judgment appealed from was entered on the 24th day of March, 1916. Notice of cross-appeal was served on the 23d day of June, or ninety-one days after the entry of judgment. Both Brents and Stafford admitted timely service of the notice, but it is suggested in the briefs that this was unwittingly and inadvertently done. However that may have been, "at the expiration of the time limited, the cause of action became an adjudicated matter, and no consent of the parties nor willingness of courts can recall a controversy thus wisely, by limitation of law, passed into the realm of ended suits." *Cogswell v. Hogan*, 1 Wash. 4, 23 Pac. 835. See, also, *Seattle, Lake Shore & E. R. Co. v. Simpson*, 19 Wash. 628, 54 Pac. 29. Counsel for Mottet impliedly concedes this point, but insists that, as the notice of cross-appeal was served within ten days after service of notice of the original appeal, the service was timely, and rests his contention on Rem. Code, § 1720, which provides as follows:

"All parties whose interests are similarly affected by any judgment or order appealed from may join in the notice of appeal whether it be given at the time when such judgment or order is rendered or made, or subsequently; and any such party who has not joined in the notice may at any time within ten days after the notice is given or served, serve an

independent notice of like appeal, or join in the appeal already taken . . . ."

Both Brents and Mottet were affected by the judgment, to be sure, but were they similarly affected, and are they prosecuting *like* appeals? Brents appeals from only that portion of the judgment "which concludes and declares 'that the garnishment of the said M. A. Stafford is entitled to priority over the assignment to Thomas H. Brents, and that, upon entry of judgment in favor of said M. A. Stafford against the said J. J. Gumm, the fund or indebtedness garnisheed be applied to the payment of the Stafford judgment, the remainder, if any, to be applied and paid to Thomas H. Brents upon his assignment,' instead of the whole thereof being so applied."

The question presented by this appeal is one of priority between Brents and Stafford, in which Mottet is in no way interested. That this is true is admitted by counsel for cross-appellant in the following language, on page 14 of his opening brief:

"We are not concerned with the quarrel between Judge Brents and Mr. Stafford as to their relative rights and priorities, further than to say that, if the law is followed and justice done, their efforts are both wasted as there will be nothing left for them to fight over."

The cross-appeal is from the whole judgment and is antagonistic and hostile to the interests of both Brents and Stafford. Cross-appellant did not serve an independent notice of *like* appeal, but, on the contrary, served notice of an independent and adverse cross-appeal, presenting entirely different questions from those involved in the original appeal and affecting entirely different interests.

Nor were the interests of cross-appellant and Brents similarly affected by the judgment. So far as the issue between Mottet and Brents was concerned, Brents was a party defendant, Mottet was plaintiff; Brents was a successful litigant, Mottet was a defeated litigant; and instead of their

interests being *similarly* affected by the judgment, its effect upon their respective interests was as dissimilar as success and failure.

Section 1720 quoted is a statute restricting the right of appeal by shortening the time within which notice of appeal must be served in cases to which it relates, and its purpose is to prevent appeals by piecemeal. It is not a statute enlarging the right of appeal by extending the time within which independent and adverse cross-appeals may be taken. *Griffith v. Seattle Nat. Bank Bldg. Co.*, 16 Wash. 329, 47 Pac. 749; *Beckman v. Brommer*, 57 Wash. 436, 107 Pac. 190. To adopt cross-appellant's contention would be simply to extend the time of appeal in his case from ninety days to one hundred days. The motion to dismiss must be granted.

Coming to the original appeal, the single question presented is this: Is an assignment of judgment, not made on the record nor filed in the office of the clerk of the court in which the judgment was rendered, good as against a subsequent garnishing creditor without actual notice of the assignment? Appellant relies upon the rule that a garnisher can acquire no better or greater rights to the debt garnished than his debtor had at the time of the garnishment, and cites cases in support of this well-settled principle. He then argues that, when Gumm assigned the judgment for value and in good faith, he ceased to have any interest in the judgment and, as this assignment was executed and delivered prior to the commencement of Stafford's garnishment proceeding, there was nothing upon which the writ could operate; that Gumm, having no interest in the judgment at the time of the garnishment, Stafford acquired nothing by his writ. That this contention is sound and unanswerable when applied to assignments of ordinary choses in action, and is equally sound as to assignments of judgment, in the absence of countervailing statute, must be admitted; but in this case the thing assigned was a judgment, and Rem. Code, § 664, provides:

"A sheriff or constable may be garnished for money of the defendant in his hands. So may a judgment debtor of the defendant when the judgment has not been previously assigned on the record, or by writing filed in the office of the clerk, and by him minuted as an assignment on the margin of the execution docket, . . ."

The language of the statute is plain and unambiguous and leaves nothing to interpretation. In effect it is a recording statute, and the words "on the record" mean what they say. The evident purpose of the statute was to protect garnishing creditors who in good faith rely on the record and act upon the information thus afforded, and to prevent fraud and perjury by closing the door against antedating assignments of judgment for the purpose of defeating the rights of such creditors.

Appellant cites 2 Freeman on Judgments (4th ed.), § 422:

"With respect to its assignable qualities, a judgment is governed by the rules applicable to other choses in action; and may be assigned by any person and by any method competent and sufficient for the assignment of any other chose in action. . . . If a statutory mode of assigning judgments is provided, this does not operate as an inhibition against all other modes of assignment. It is cumulative, and does not prevent a party from making an equitable assignment in any other lawful way; and such assignment, as to all persons having notice thereof, is as effective as the statutory assignment."

This is unquestionably a correct statement of sound law, and we do not wish to be understood as holding that, where a statute provides a mode of assigning judgments, the mode so prescribed is exclusive, in the absence of express declaration to that effect, and prevents a party from making an equitable assignment in any other lawful way. We simply hold that, where the statute provides how notice of the assignment shall be given in order to affect the rights of third persons, the provisions of the statute are controlling.

The case of *Bellingham Bay Boom Co. v. Brisbois,* 14 Wash. 173, 44 Pac. 153, 46 Pac. 238, is cited and earnestly

relied upon as sustaining the contention that an assignment
of judgment is good against a garnishing creditor even
though it be not made or filed in the manner provided by
§ 664, *supra*. But a careful reading of that case discloses
that the court was considering an assignment of an ordinary
chose in action. The instrument under which appellants in
that case were claiming was an assignment of an account for
money advanced and labor performed, made during the pen-
dency of an action to enforce its collection, but before the
rendition of judgment. The writ of garnishment also was
sued out and served prior to the rendition of judgment.
Therefore the question of assigning judgments was not, and
could not have been, before the court. That the court was
considering an assignment of a chose in action merely is
shown by the following language, on page 177, of the opinion:

"We think an assignment of a chose in action in good faith
and for value, and with no intent to hinder, delay or defraud
creditors or subsequent purchasers, is complete and effectual
as against third persons, upon its execution and delivery to
the assignee, and does not acquire any additional force or
validity by notice to the debtor."

Again, at page 181, the court says:

"But it [the legislature] has not yet said that no assign-
ment of a chose in action shall be valid as to creditors or in-
nocent purchasers unless recorded or notice thereof be other-
wise given to such persons; and, in the absence of such a
declaration, we do not think we ought to depart from what
we deem the better doctrine, on account of any supposed
analogy between ordinary bills of sale and assignments of
choses in action."

The latter paragraph clearly implies that, if the legisla-
ture had said that no assignment of a chose in action shall be
valid as against creditors and innocent purchasers unless
recorded in a prescribed manner, the provisions of the statute
would have controlled; and this is precisely what the legis-
lature has said, so far as garnishing creditors are concerned,
when the thing assigned is a judgment.

It is suggested that Stafford, by filing an amended affidavit and causing a writ of garnishment to be served on the wife of Gumm, lost his rights under the original writ. The suggestion is without merit. The amendment was one contemplated by § 303 of Rem. Code, and did not disturb or affect the rights acquired under the original writ.

The judgment will be affirmed.

Morris, Mount, Parker, and Fullerton, JJ., concur.